UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| ROBERT BURGETT, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | Civil Action No. 11-110-ART |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| TROY-BILT LLC, et al., | ) | **ORDER** |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

How much is a pinky toe worth? From the present record, it is impossible to know. The Court therefore grants the Burgetts' motion to remand.

## BACKGROUND

In January 2010, Robert Burgett purchased a Troy-Bilt riding lawnmower at Lowe's Home Center in Paintsville, Kentucky. R. 18-1 at 1. In June 2010, while riding the mower on his hilly front lawn, the mower tipped back and Burgett fell from the seat. *Id.* The mower had a pressure kill switch underneath the operator's seat that should have shut off the mower if the rider dismounted. *Id.* at 2. But the kill switch allegedly failed to function properly. The mower's engine and cutting blades continued to run as the mower righted itself and turned downhill toward Burgett, mowing over his foot. *Id.* at 1. The accident caused the amputation of the last two toes on Mr. Burgett's foot. R. 1-1 at 12.

On June 9, 2011, Burgett and his wife, Donna Burgett, filed suit in Pike Circuit Court. R. 1-1. The Burgetts named as defendants Troy-Bilt LLC; Troy-Bilt's parent company, MTD Products, Inc.; the manufacturer of the mower's engine, Kohler Co.; Lowe's Home

Improvement, LLC; Lowe's Home Centers, Inc.; and the alleged manager of the Paintsville Lowe's at the time Burgett purchased the mower, Kevin Raymer. *Id.* All of the defendants are diverse from the Burgetts with the exception of Raymer, a citizen of Kentucky. R. 1 at 3–4. Naturally, the defendants alleged that the Burgetts fraudulently joined Raymer and removed this action to federal court on the basis of diversity jurisdiction. R. 1 at 4. The Burgetts filed a motion to remand, R. 18, denying fraudulent joinder, R. 18-1 at 4, and asserting that the defendants did not support their allegation of the amount-in-controversy. *Id.* at 12.

## DISCUSSION

### I. Amount in Controversy Requirement

When a defendant removes an action to federal court alleging diversity jurisdiction, the defendant bears the burden of demonstrating by a preponderance of the evidence that damages meet the amount in controversy requirement. *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 829 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993) (*overturned on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)). In cases "where the plaintiff seeks to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," the defendant must prove that it is more likely than not that the plaintiff's claims exceed $75,000. *Gafford*, 997 F.2d at 158. Thus, the defendants must affirmatively come forward with competent proof showing that the amount-in-controversy requirement is satisfied. *Id.* at 160.

**A. The defendants have not produced sufficient evidence that Burgett's damages are greater than $75,000.**

The defendants' speculation of Burgett's damages in this case is not sufficient. In their removal notice, the defendants baldly asserted that the amount in controversy more likely than not exceeds $75,000 because Burgett seeks damages for medical expenses, diminished capacity to earn wages, and pain and suffering. R. 1 at 6. But the defendants did not specify any of these amounts. Instead, they state that a "common sense reading of the Complaint demonstrates that the incident and injury alleged [are] significant." R. 1 at 6. Specifically, the defendants rely almost entirely on the fact that the plaintiff lost the last two toes on his foot.

The Burgetts do not concede that the amount in controversy is greater than $75,000, despite Burgett's toe amputations. R. 18-1 at 13. However, this is not the end of the story. If it appears likely from the face of the pleadings that damages will exceed $75,000, the Court can retain jurisdiction despite the Burgetts' objections. *See Gafford*, 997 F.2d at 158; *see also Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("When the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement."). But in amputation cases in which courts have found that the amount in controversy is likely satisfied, the alleged injuries caused either the total or substantial loss of use of legs, hands, and feet. In *Lucas v. Springhill Hospitals, Inc.*, 2009 WL 1652155 (N.D. Ohio June 11, 2009), the plaintiff ingested defective medication leading to gangrene in, and the eventual amputation of, both of his legs. In *del Angel v. Heidelberg Eastern, Inc.*, 2002 WL 88359 (N.D. Ill. Jan. 23, 2002), a paper-cutting machine nearly

severed the plaintiff's right foot and caused muscular atrophy as well as the loss of the use of all of his toes. In *Branham v. Hunter's View, Ltd.*, 2011 WL 1660559 (E.D. Mo. May 3, 2011), the plaintiff severed four of the five fingers on his left hand while installing a tree stand for hunting. In *Novak v. Sawyer Cnty.*, 2003 WL 23272378 (W.D. Wis. Oct. 10, 2003), the plaintiff alleged negligent medical treatment resulted in the amputation of his leg. Due to the severity of the injuries, each of these limb-loss cases presented compelling reasons to believe that damages exceed $75,000, and it would have been a waste of time to remand the case to state court simply to conduct formal discovery of a foregone conclusion. *See United States v. Storey*, 640 F.3d 739, 747 (6th Cir. 2011) (finding "no reason to remand" where remand for discovery would "serve no purpose").

But this case is not so obvious. The complaint does not explicitly allege diminished use of the foot, let alone total loss. Burgett alleges damages for past and future medical expenses, diminished capacity to earn wages, and pain and suffering as a result of permanent disfigurement, but it is difficult to value these claims in the abstract. Because, really, what is the value of a pinky toe? And the fourth toe is not even talked about enough to have a colloquial name. Obviously nobody would voluntarily go without these toes, but that does not demonstrate the value associated with their loss. If Burgett were a ballerina or professional athlete, it might be an easier case. *But see* Bill Dwyre, *Ronnie Lott Knows His Days of Misery Are Coming*, L.A. Times (Apr. 18, 2011) ("[F]acing the choice of intricate finger surgery and possibly mixed playing time, or amputation of the tip of his [pinky] finger . . . [San Francisco 49ers free safety Ronnie Lott] chose amputation and played on for six more years."). At this time, the record does not reflect that Burgett is a dancer, a

4

professional athlete, or a foot model. And, the Court cannot speculate as to the toes' value. Indeed, evidence from which the Court could resolve the value should not be hard to come by in state court—whether through admissions, interrogatories, or otherwise. At the end of the day, doubts are resolved in favor of remand. *Smith v. Nationwide Prop. and Cas. Ins. Co.*, 505 F.3d 401, 405 (6th Cir. 2007). At this time, defendants simply have not introduced enough evidence from which the Court could conclude that the amount in controversy exceeds $75,000.

**B. The defendants cannot aggregate damages of multiple plaintiffs to satisfy the amount in controversy.**

The defendants also cannot satisfy the amount in controversy by aggregating each of the Burgetts' separate damages, as they seem to suggest. *See Everett*, 460 F.3d at 822 ("While a *single* plaintiff may aggregate the value of her claims against a defendant to meet the amount-in-controversy requirement . . . the same is not true with respect to *multiple* plaintiffs." (citations omitted)). There is no allegation that the two are suing to enforce a "single title or right in which they have a common or undivided interest." *See Snyder v. Harris*, 394 U.S. 332, 335 (1969). In total, the defendants have not shown that either Mr. or Mrs. Burgett's claim exceeds the $75,000 requirement. Hence, this matter must be remanded to state court under 28 U.S.C. § 1447(c).

**II. State-Court Discovery**

Although a defendant need not prove to a legal certainty that the plaintiff's damages are more than the amount-in-controversy requirement, *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001), he nevertheless may be required "to research, state and prove the plaintiff's claim for damages." *Id*. (citing *Gafford*, 997 F.2d at 158). The

defendants have plenty of ways to get this information. This Court has stated previously that when the complaint is silent as to the amount in controversy, the defendant should engage in discovery on that issue before removing the case. *Minix v. Kawasaki Motors Corp.*, No. 09-90, 2009 WL 2212282, at *3 (E.D. Ky. July 23, 2009); *see also May v. Wal-Mart Stores, Inc.,* 751 F .Supp. 2d 946, 948 (E.D. Ky. Nov. 17, 2010); *Hackney v. Thibodeaux,* No. 10-35, 2010 WL 1872875, *2 (E.D. Ky. May 10, 2010); *Wood v. Malin Trucking, Inc.*, 937 F. Supp. 614, 616 (E.D. Ky. 1995). A defendant can also acquire this evidence through pre-removal interrogatories, *King v. Household Finance Corp. II*, 593 F. Supp. 2d 958, 960 n.2 (E.D. Ky. 2009); *see, e.g.*, *Marcum v. State Farm Mut. Auto. Ins. Co.*, No. 6:07-269, 2007 WL 2461623, at *3 (E.D. Ky. Aug. 22, 2007), or through pre-removal requests for admissions, *King*, 593 F. Supp. 2d at 960 n.2. Or the defendant could take depositions. Instead, the defendants incorrectly chose "none of the above."

Defendants often argue that requiring them to engage in discovery with respect to the amount in controversy places them in a Catch-22 because they cannot possibly conduct discovery in time to comply with the thirty-day removal deadline. This argument, however, ignores a key portion of the removal statute. The thirty-day deadline runs from the date on which the first document is filed that makes the case removable—not the date on which the defendant was served. *See* 28 U.S.C. § 1446(b). Thus, when a complaint fails to allege the amount in controversy, the defendant will have ample opportunity to engage in the appropriate discovery because the thirty-day removal deadline will not start to run until the defendant receives discovery responses showing that the amount in controversy exceeds the jurisdictional amount. *King*, 593 F. Supp. 2d at 960 n.2.

6

In short, the defendants have produced no evidence to support their assertion that the amount-in-controversy requirement is satisfied in this case. Therefore, the Court can remand on this basis alone and does not need to decide whether the Burgetts fraudulently joined Raymer. *But see Mitchell v. Dow Chem. Co.*, Civ No. 11-117, 2011 WL 2938156 (E.D. Ky. July 19, 2011) ("Just as the manager of a toy store could be found negligent for allowing an unreasonably dangerous toy—Bag O' Rusty Nails, for example—to remain on the shelves, so too could Mitchell prevail against [the defendant manager of a Lowe's Home Center] if she can prove up the allegations in her complaint.").

## CONCLUSION

Accordingly, it is **ORDERED** that the Burgetts' motion to remand, R. 18, is **GRANTED**. This case is **REMANDED** to the Pike Circuit Court and **STRICKEN** from the Court's active docket. All other pending motions are **DENIED** as moot.

This the 5th day of October, 2011.

Signed By:
*Amul R. Thapar* AT
United States District Judge